# Eli C. Briscoe *v.* John W. Thompson *et al.*

The property of an intestate, in the hands of his administrator, is a trust fund for the benefit of the creditors and distributees of the estate; and any one purchasing any portion of that fund, with either actual or constructive notice of the trust attached to the property, becomes *ipso facto* a trustee.

An administrator has no power to make a purchase of negroes for the benefit of the estate on which he administers, except by the authority of the probate court.

A purchaser of an administrator is presumed, by law, to know whether the administrator had power to sell the property of his intestate.

Where an administrator sold a promissory note of his intestate for slaves, without an order of the probate court for that purpose; held, that the note, or the proceeds thereof, could be recovered by the estate.

On the 30th day of April, 1833, William Fisher, of Virginia, sold to Benjamin Hughes, of Mississippi, a lot of slaves; and on the following day Hughes sold a part of said slaves to one John W. Thompson, and received a note from said Thompson, dated April 30th, 1833, due 1st day of January, 1837, for the sum of eight thousand dollars. Hughes indorsed the note and delivered it to Wm. Fisher, in part payment of the lot of slaves bought by Hughes of Fisher. William Fisher died in Virginia some time in the year 1836, having this note still in his possession. In March, 1836, John J. Fisher, of Mississippi, applied to the probate court of Claiborne county for letters of administration, *ad colligendum*, on the estate of Wm. Fisher, with a view of enforcing the collection of said note and other claims of Wm. Fisher, deceased, in this state. The application was granted for letters *ad colligendum*, but by mistake the clerk issued letters *in chief*. At the May term, 1836, John B. Thrasher, not knowing the mistake in the issuance of the letters to Fisher, obtained letters *in chief* on the same estate. In January, 1837, the mistake above referred to was discovered, and a controversy arose between Fisher and Thrasher as to which was the legal administrator. At the May term, 1837, the probate court made an order correcting the mistake. At the

April term, 1838, Thrasher obtained an order revoking the letters of Fisher; and at the May term, 1838, Thrasher was granted letters *de bonis non* on the same estate.

Some time after the death of Wm. Fisher, John J. Fisher was on a visit to Virginia, and the administrator of said Wm. Fisher in Virginia placed the said note for eight thousand dollars in the hands of John J. Fisher, requesting him to deliver the same to Thrasher for collection. John J. Fisher, instead of delivering the note to Thrasher, retained it himself, claiming to be the administrator of said Wm. Fisher. In December, *1836, John J.* Fisher traded the note to one Jacob Hoover for negroes, at the same time informing Hoover that the note belonged to the estate of William Fisher, and that he was buying the negroes for the benefit of that estate. Hoover placed the note in the hands of one Briscoe for collection. When the note fell due, John W. Thompson, the drawer of the note, paid the same to Briscoe as the agent of Hoover. Thrasher notified Briscoe that the money belonged to him as administrator of Wm. Fisher; he also sued Thompson, and obtained judgment against him for the amount of the note, and Thompson claimed the money of Briscoe to liquidate that judgment. Hoover claimed the money by virtue of his trade for the note with John J. Fisher.

In consequence of these conflicting claims, Briscoe filed his bill and interpleader, stating the facts—to which Hoover, Thrasher and Thompson answered, and depositions were taken, proving the foregoing statement; and, in addition thereto, that John J. Fisher appropriated to his own use the slaves for which he traded the note in question, and that Hoover knew that the note in controversy belonged to the estate of Wm. Fisher.

ALEXANDER MONTGOMERY, for Hoover.

Points contended for by Hoover.

First. That there was no fraud or collusion between him and J. J. Fisher. Take it for true that J. J. Fisher informed Hoover that the note was the property of the estate, it must also be admitted that he told him he was purchasing for the estate. See Fisher's deposition. There is no doubt of the power of an administrator to transfer a promissory note at common law. 2 Bur. 1216; Story's

Confl. of Law 262; 8 Mass. 199, 201; 1 Dur. and E. 487; 3 Pet. Con. Rep. 6.

We have no statute limiting the powers of an administrator in relation to choses in action. Our statute only prohibits an administrator from taking the personal property at the appraisement; and also the sale of such property otherwise than at public sale. Rev. Code, 60, sec. 109.

We admit a transfer of the note for the private benefit of the administrator, if such were known to the party who received it, would be a fraud on the rights of the estate, which courts of equity would relieve against; but Fisher shows that Hoover must have acted in good faith, as he, Fisher, professed to be purchasing for the benefit of the estate, which, by leave of the probate court, he had a right to do; and although Fisher was not acting in good faith, Hoover should not be injured thereby, as he did not participate in such fraudulent intentions, or know of their existence. Laws of Miss. 1830; Ald. Dig. 245. The case of Prosser *v.* Leatherman is not conclusive, because that was a case of fraud, and not a question of power. The court rest their judgment on the circumstances of collusion between the assignee and administrator; 2 How.

There is a discrepancy between Hoover's answer and Fisher's deposition on this point, as Hoover denies knowing William Fisher, or any thing of his death. Briscoe states that Fisher told him that the note belonged to William Fisher's estate. Now as Briscoe was the adviser of Hoover, in making the trade, it is probable Fisher told him what he says he told Hoover, and has forgotten which, and thinks it was Hoover.

Taking Hoover's statements to be true, and he stands as a bona fide purchaser of the note, properly indorsed by the previous owners, and is legally and equitably entitled to it, against all the world. But even if Fisher's statement is true, and Hoover has happened to forget it, and has asserted a different claim, that should not affect his just rights, when they are made to appear.

Our system of administration laws anticipates such conduct as this on the part of administrators, and guards against it, by requiring sureties for the faithful discharge of this trust; and if Hoover's rights in this instance are sustained, the estate, for all that appears

is none the worse off, as it appears he gave sureties; and it does not appear that either he or his sureties are irresponsible. And, although the bond does not correctly recite the kind of letters that were granted, he is estopped by his bond from denying that letters *ad colligendum* had been granted him, and the proof is abundant, besides his own deposition, that he wasted this part of the estate. See Fox Alden's book, 234.

There is no evidence that Briscoe was agent for Hoover, or had any thing to do with the note until after Hoover bought it; consequently the communications made to him by Mr. Thrasher cannot effect Hoover's right, unless they were brought home to the knowledge of Hoover. So, take the case which way you will, it is in favor of Hoover. As the knowledge of the interest which William Fisher's estate had in it is not brought home to him, otherwise than as appears by J. J. Fisher's deposition, if that is credited, then Hoover had reason to believe he was selling to W. Fisher's estate; discard that, and Hoover had reason to believe J. J. Fisher was the *bona fide* assignee of the note.

W. R. T. CHAPLAIN for Thrasher.

The CHANCELLOR.

The bill of interpleader shows that a note for $8,000, made by defendant, Thompson, and indorsed by B. Hughes to William Fisher, deceased, which came to the possession of John J. Fisher, as administrator of William Fisher, was traded to the defendant Hoover, for negroes, and by Hoover placed in the hands of the complainant, Briscoe, for collection. The money due on the note was paid by Thompson, the maker, to Briscoe, who now holds it subject to such decree as may be made under his bill of interpleader between the three defendants, each of whom claim it. Thrasher claims the money, as administrator of William Fisher, as assets of that estate, he having succeeded J. J. Fisher, whose letters had been revoked. Hoover claims it under his purchase of it from J. J. Fisher, and states that at the time he traded for it he had no knowledge that it belonged to the estate of William Fisher. Thompson claims it, because he says Thrasher, as the administrator of W. Fisher, has recovered a judgment against him upon the

Eli C. Briscoe *v.* John W. Thompson *et al.*

same claim, and insists that it shall either be paid to him, or if to Thrasher, that Thrasher shall be perpetually enjoined from collecting the judgment against him.

Several minor questions were raised on the argument, which it is not now important to notice. The principal question in the case is this: was the *note* upon which the money in question was realized the property of the estate of William Fisher at the time it was traded by John J. Fisher to the defendant, Hoover, and was Hoover advised of that fact? The affirmative of both branches of this inquiry is fully sustained by the depositions of E. C. Briscoe and that of J. J. Fisher, who likewise prove that at the time he told Hoover that the note was the property of the estate of Wm. Fisher, he also told him that he was buying the negroes for the estate. The property of an intestate in the hands of his administrator is clearly a trust fund for the benefit of the creditors and distributees of the estate, and any one who purchases any portion of that fund, with either actual or constructive notice of the trust attached to the property, takes it clothed with the trust, and is bound by it, and becomes *ipso facto* a trustee. 3 Yerger 257; 1 Yerger 296. The fact, then, that John J. Fisher communicated to Hoover, at the time of the purchase, that the note traded was the property of the estate of William Fisher, was sufficient notice to charge him with the claim of William Fisher's administrator, unless he is relieved from the effects of that notice by the statement to him that John J. Fisher was *purchasing the negroes* for the estate of his intestate, William Fisher.

An administrator, as such, has no power to make a purchase of negroes, unless by the authority of the probate court, and Hoover was bound to have known the law, and to have ascertained whether such authority had or had not been granted to John J. Fisher. In 1 Munford, 431, it was held that a purchaser at a sheriff's sale is bound to inquire and take notice whether that officer, and all others whose agency was required by law, proceeded with due regularity in the discharge of their duty; and I apprehend that the same rule will apply with equal if not greater force to one who deals with an administrator respecting the assets of his intestate, knowing them to be such.

Eli C. Briscoe *v.* John W. Thompson *et al.*

The policy of our law is against the English rule in relation to the dominion of an administrator over assets in his hands. In South Carolina, in 4 Dessaus. it was held, that the court would follow a note of hand as the property of an estate, if really taken for assets of the estate, sold by the administrator, though the note be taken in the private name of the administrator, and will enforce this against the private creditors of the administrator. In the case of Thomas H. Prosser *v.* Leatherman, administrator, &c.; the High Court of Errors and Appeals of this state recognize the same rule. That is a decision which I think goes the length of settling the main question of the case now under consideration.

A decree will be made directing the payment, by Briscoe, of the money in his hands to Thrasher, and an injunction against Hoover, and against Thrasher's judgment against Thompson.

The costs of the complainant upon the bill of interpleader must be paid out of the fund in his hands.